

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| In re:<br><br><br>Wilda Rodríguez Plaza | 2011 TSPR     98<br><br>182 DPR _____ |

Número del Caso: AD        - 2007 - 1
                          AD- 2009 - 2


Fecha: 29 de junio de 2011


Oficina de Administración de los Tribunales:

        Lcda. Julia María Badillo Lozano
        Lcda. María Victoria López Menéndez


Abogados de la Querellada:

        Lcdo. Carlos R. Ríos Gautier
        Lcdo. Gustavo A. Chico Barris
        Lcda. María Cristina Mullan Dávila
        Lcda. Elisa Bobonis Lang


Materia: Conducta Profesional


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a      la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

                                      AD-2007-1
                                      AD-2009-2
WILDA RODRÍGUEZ PLAZA


*PER CURIAM*

En San Juan, Puerto Rico, a 29 de junio de 2011.


He aquí el dilema: la aplicación correcta de la ley o la norma jurídica no es suficiente para ejercer correctamente la *función judicial*. Los estilos de trabajo, de comunicación y el comportamiento del juez en y fuera del tribunal son igualmente importantes para la imagen y el logro de la justicia. Uno de los elementos que posiblemente más contribuye a elevar o erosionar el respeto, el prestigio y la estimación por nuestra judicatura es la forma en que los jueces se comportan en el Salón de Sesiones.

L. Rivera Román y C. López Cintrón, El temperamento y la función judicial, Rev. Ley y Foro, Núm. 1, pág. 4. (2009)

I

En esta ocasión, tenemos la encomienda de evaluar el comportamiento de la ex juez Wilda

Rodríguez Plaza, a quien se le imputaron infracciones a los Cánones de Ética Judicial. Estas imputaciones tienen su génesis en dos procesos disciplinarios distintos, AD-2007-1 y AD-2009-2. En específico, a la entonces juez se le atribuyeron transgresiones a los Cánones 4, 8, 9, 13, 14 y 33, 4 L.P.R.A. Ap. IV-B.

Durante la tramitación del proceso disciplinario, la Lcda. Wilma Rodríguez Plaza renunció a su cargo de juez superior efectivo el 31 de diciembre de 2010. Así pues, el asunto que tenemos ante nuestra consideración es auscultar si las actuaciones de la licenciada Rodríguez Plaza en el desempeño de su cargo como juez, engendraron violaciones a los Cánones de Ética Profesional. En aras de preservar la fluidez en el análisis, narraremos por separado los hechos de los dos procesos disciplinarios.

II

A

El 10 de febrero de 2006, el entonces Gobernador de Puerto Rico, Hon. Aníbal Acevedo Vilá, designó a la licenciada Rodríguez Plaza para ocupar el cargo de juez superior. El Senado de Puerto Rico confirmó su nombramiento el 26 de abril de 2006 y la licenciada Rodríguez Plaza juramentó el 31 de mayo de 2006. Antes de asumir el cargo, la ex juez Rodríguez Plaza laboró por espacio de diecisiete años en el bufete Goldman, Antonetti & Córdova, P.S.C., donde ocupó la posición de socia. Durante su estadía en el bufete,

se especializó en la práctica del derecho civil, corporativo, bancario, quiebras y ejecuciones de hipoteca.

Luego de completar el adiestramiento en la Academia Judicial, fue asignada al Tribunal de Primera Instancia, Sala de Aguadilla, el 18 de julio de 2006. Allí la recibió la juez administradora, Hon. Miriam Santiago Guzmán. Ésta le informó que tendría a su cargo una sala en que se atenderían casos de tránsito, delitos menos graves, vistas de causa probable para arresto en alzada e impugnación de confiscaciones. Aunque se asignó en propiedad al Tribunal de Aguadilla, la querellada Rodríguez Plaza tenía que trasladarse los miércoles al Tribunal Municipal de Isabela para atender ciertos casos.

Por motivo de actuaciones y comentarios de la querellada Rodríguez Plaza, el capitán de la Policía, Miguel Rosado Carrero, redactó una carta que remitió a la juez administradora Santiago Guzmán. En esta misiva narró una situación incómoda que ocurrió en la sala que presidía la querellada Rodríguez Plaza. En esa ocasión, ésta se encontraba en la Sala de Isabela ante un salón repleto de personas y atendía casos relacionados a la Ley de Tránsito. El agente Velázquez Webb se dirigió hacia los bancos designados para los policías y allí se encontró con la agente Isabel Valle, a quien saludó con un toque de mejillas. Al observar el incidente, la juez Rodríguez Plaza los señaló y en voz alta les ordenó que pasaran al estrado. Al llegar al estrado, ambos agentes recibieron una reprimenda de parte de la juez Rodríguez Plaza, quien les dijo que no podía permitir

esa conducta impropia en su sala, pues constituía una falta de respeto. Añadió que eso no se debía hacer en un tribunal sino en una plaza pública.

Cuando la juez Rodríguez Plaza culminó de hablar, la agente Valle le intentó explicar que solo se trataba de un saludo. Acto seguido, la juez ordenó a la agente Valle que se callara. El agente Velázquez Webb pidió disculpas e indicó que no fue su intención faltarle el respeto al tribunal. Según este último, nunca en sus más de veinticinco años en la Policía de Puerto Rico había tenido una situación de esa naturaleza.

Luego del incidente de los agentes Valle y Velázquez Webb, hubo otro relacionado con el agente Esaút Ruiz. En esa ocasión se llamó el caso del agente Ruiz pero este no se encontraba presente en el tribunal. Sin reparos, la juez Rodríguez Plaza emitió una orden de arresto en su contra y fijó una fianza de $5,000 sin derecho a prestar el 10%. Acto seguido, expresó sonriéndose y mirando hacia el banco de los policías: "Recuerden que Guerrero está bien cerca". Algunos policías interpretaron dicho comentario como una amenaza de que si ellos no comparecían a sala, la querellada Rodríguez Plaza tendría la opción de enviarlos a la cárcel ubicada en el Barrio Guerrero de Aguadilla y fijarles fianza sin derecho al 10%. Agraciadamente, el agente Ruiz compareció al tribunal, se excusó por su tardanza y la juez querellada dejó sin efecto la orden de arresto.

En otro incidente, la juez querellada llevó a su perro de la raza "cocker spaniel" a la sala de tribunal en Isabela, porque el animal se encontraba enfermo. El perro se mantuvo todo el tiempo en el despacho de la juez querellada. Esta advirtió a los funcionarios del tribunal que no tocaran al perro porque podía morder. Afortunadamente, no hubo incidentes ese día. Mientras el tribunal se encontraba en sesión, la juez Rodríguez Plaza manifestó a los presentes que llevó su perro al tribunal porque estaba enfermo. De igual forma, expresó que tendría que suspender el calendario de la tarde porque tenía que llevar el perro al veterinario. No obstante, la querellada atendió los casos de la tarde.

En otra ocasión, la juez administradora recibió una queja del Lcdo. José Trabal Cuevas en torno a una situación que surgió en sala el 13 de septiembre de 2006. Ese día, se celebró una vista en su fondo en el caso <u>Pueblo de Puerto Rico v. Zuleni González Rodríguez</u>, ALTR-2006-0813. Durante la vista, surgió un incidente en el que la juez Rodríguez Plaza le solicitó al licenciado Trabal Cuevas que no aumentara el tono de su voz. El abogado contestó que ese era su tono de voz. En ese momento el ambiente en la sala era sumamente tenso. Con posterioridad, el abogado le explicó a la querellada que era sordo del oído derecho. Además, le indicó que tenía un derecho constitucional a su privacidad y que no tenía que divulgar información personal. La querellada Rodríguez Plaza contestó que ella no le obligó a divulgar esa información y solo le dijo que bajara la voz.

El 27 de septiembre de 2006 hubo otro incidente entre el licenciado Trabal Cuevas y la juez Rodríguez Plaza mientras se veía el caso Pueblo de Puerto Rico v. Juan J. Juarbe Barreto, A1TR-2006-000275 Y A1TR-2006-000276. El juicio en su fondo estaba señalado para las 2:00 p.m. y cuando se llamó el caso a las 2:05 p.m. el letrado no estaba presente. A raíz de esto, la querellada le asignó un turno posterior y declaró que si el abogado llegaba después de las 2:30 p.m. le impondría una sanción de $25 por su tardanza, y que cada media hora adicional le añadiría otra sanción. Manifestó, además, que el licenciado conocía cual era la norma del tribunal con relación a las tardanzas.

El licenciado Trabal Cuevas se presentó a las 2:15 p.m. a la sala de la querellada Rodríguez Plaza. En ese momento ésta dialogaba con otro abogado y al ver al licenciado Trabal Cuevas, le dijo, fuera del registro, que su caso se había llamado y que próximamente lo atendería. En ese instante, el letrado Trabal Cuevas, molesto, le reclamó que cómo era posible que su caso hubiese sido llamado si no se podían atender dos casos a la vez. A eso, la juez replicó que el licenciado Trabal Cuevas no entendía el procedimiento que ella seguía en su sala, donde escalonaba los casos para ver los que estuvieran preparados. Acto seguido, el licenciado Trabal Cuevas le expresó a la juez que él conocía el proceso y que además, merecía respeto. Indicó, de igual forma, que la querellada Rodríguez Plaza menospreciaba su capacidad y eso lo hacía sentir muy mal. Finalmente, el licenciado Trabal

Cuevas solicitó y obtuvo otro turno posterior. Luego, el abogado solicitó la inhibición de la juez Rodríguez Plaza. Entonces, la querellada refirió el asunto a la juez administradora.

Otro incidente que provocó la presentación de una de las quejas que dio origen a este proceso disciplinario fue el ocurrido con la Srta. Ashley González Fuentes. El 4 de diciembre de 2006 se celebraba una vista ante la querellada Rodríguez Plaza. En ese momento, ésta tomaba café en el estrado. Cuando el aguacil de sala llamó un caso se escuchó un bostezo fuerte que provenía de la parte posterior del salón. A renglón seguido, la juez querellada le dio instrucciones al alguacil de sala para que hablara con la persona que había bostezado. Cuando el alguacil se acercó a la señorita González Fuentes, esta se molestó e hizo un comentario. La juez Rodríguez Plaza la mandó a callar y la señorita González Fuentes le replicó. Al final, la juez ordenó al alguacil que sacara a la joven y a su acompañante. Después que la señorita González Fuentes fue removida de la sala, fue llorando a la oficina de la juez administradora Santiago Guzmán para contarle lo ocurrido y de paso, presentó una queja contra la juez Rodríguez Plaza. Posteriormente, la juez querellada se inhibió del caso que se iba a ver ante ella y en el cual la señorita González Fuentes era la imputada.

Por otro lado, el 27 de diciembre de 2006 ocurrió otro incidente inusual con la querellada. Mientras se encontraba

en la sala de Isabela, la juez Rodríguez Plaza ofreció entremeses a los presentes. Los entremeses estaban colocados en la mesa del área de los fiscales. Al pasar el alguacil Carlos Rivera López y verlos, la querellada le indicó que había piscolabis para el público, abogados y fiscales, pero que él no podía comer porque estaba "muy gordito". Tiempo después, el alguacil Rivera López manifestó que se sintió incómodo por la situación.

Al día siguiente, ocurrió otro suceso inusitado en la sala de Aguadilla. La querellada manifestó que era el Día de los Inocentes y que había traído entremeses y refrigerios a los presentes. Mientras la ex juez atendía los casos, comía en el estrado. Cuando el Lcdo. David Villanueva Matías llegó al salón de sesiones, le pareció raro lo que observaba, por lo que preguntó la razón de los entremeses. Le informaron que la fiesta era por ser el Día de los Inocentes. Cuando el abogado se acercó al podio mencionó que era el día de su cumpleaños. En ese momento, la querellada Rodríguez Plaza instruyó a su secretaria que apagara el registro para cantarle cumpleaños al letrado. Una vez fuera del registro, todas las personas en sala, unas 50, le cantaron cumpleaños al abogado.

B

Con posterioridad a los hechos narrados anteriormente, la Oficina de Administración de los Tribunales (OAT) trasladó a la querellada a la Región Judicial de Fajardo. Durante su estadía en esa región, la OAT recibió tres quejas

juramentadas que presentaron el Sr. Jaime Barreto Camacho, el alguacil Omar Vázquez Cordero y el Lcdo. Ricardo M. Prieto García.

El señor Barreto Camacho trabajó como secretario jurídico de la querellada desde el 16 de marzo de 2007 hasta el 16 de septiembre de 2008. Durante las vistas celebradas, el señor Barreto Camacho testificó que el transcurso del día de trabajo siempre dependía del estado de ánimo en que llegara la juez. Manifestó, además, que la juez Rodríguez Plaza le hizo varios comentarios ofensivos tales como que lo "quería restrellar contra la pared" y "que estaba gordo como un lechón". Añadió que en la oficina debía mantenerse silencio absoluto porque a la juez le molestaban los ruidos y las interrupciones. Según alegó el Sr. Barreto Camacho, si otros compañeros del tribunal iban a la oficina, éste tenía que comunicarles por señas que se retiraran.

Durante la segunda semana de trabajo del señor Barreto Camacho, la querellada le solicitó que verificara si estaba matriculada en un seminario y la hora en que este se llevaría a cabo. Debido a que el señor Barreto Camacho cometió un error y le informó la hora incorrecta, la juez Rodríguez Plaza le indicó que su trabajo era "chapuceado" y que iba a evaluar si él continuaría siendo su secretario jurídico. Además le advirtió que hablaría del asunto con el juez administrador del Tribunal de Fajardo.

En otro asunto, en el Centro Judicial de Fajardo se impartieron instrucciones para que los secretarios jurídicos

no entraran al salón de sesiones ni fueran a la Secretaría a buscar expedientes. Por el contrario, se debía seguir el procedimiento formal establecido para ello. No obstante, la querellada Rodríguez Plaza le requería a su secretario que entrara a sala para darle mensajes, ya fuese sobre llamadas telefónicas que estuviera esperando o para notificarle otros asuntos. Por otro lado, también obligaba al señor Rodríguez Barreto a entrar a la Secretaría del tribunal a buscar expedientes aunque no tenía autorización formal para ello. A pesar de las directrices existentes, la querellada Rodríguez Plaza justificaba su proceder fundamentándose en que ella era la juez que presidía la sala y podía disponer lo que podía hacerse allí.

En ocasiones, el señor Barreto Camacho realizó tareas que no formaban parte de sus funciones como secretario jurídico, ya fuera porque la juez se lo ordenaba o porque él lo quería hacer. Entre estas, realizó depósitos en la cuenta de banco de la querellada Rodríguez Plaza, gestionó los preparativos de su boda (todo lo relacionado con el alquiler de mesas y sillas, música y comida) y empujó su vehículo en dos ocasiones porque se le había dañado. Además, en varias ocasiones, el señor Barreto Camacho redactó en su oficina, a solicitud de la querellada, cartas personales dirigidas a diversas entidades para ser suscritas por ella o por su esposo, el Sr. Rafael Layer Rosario. Entre los destinatarios de estas cartas cabe mencionar los siguientes: Banco Santander de Puerto Rico, Autoridad de Energía Eléctrica,

AT&T, AAA Almacenes y la Administración de Sustento de Menores (ASUME).

En otro incidente, la Sra. Ileana Ramos, amiga del señor Barreto Camacho, fue a preguntarle sobre el estado de salud de su abuela. El señor Barreto Camacho le relató que su abuela había sido diagnosticada con una condición conocida como "culebrilla". Cuando la querellada Rodríguez Plaza escuchó de lo que se trataba, le dijo a su secretario que se fuera de la oficina, que eso le había dado a ella y que era contagioso. Como la condición de su abuela se complicó, el señor Barreto Camacho contrató a otra persona para que se hiciera cargo de llevarla a sus citas médicas y estuviera pendiente de darle seguimiento a su tratamiento. En una ocasión, la persona que cuidaba a su abuela llamó al señor Barreto Camacho a su teléfono móvil para informarle sobre la condición de salud de su abuela y cuando esta lo vio hablando por celular, le llamó la atención y le dijo que entrara a su oficina. Allí lo regañó fuertemente por lo ocurrido.

Cansado de que se le regañara constantemente, el señor Barreto Camacho renunció a su cargo mediante carta de 16 de septiembre de 2006. Tras presentar su renuncia, le explicó a la juez administradora Cartagena Colón las razones que lo llevaron a tomar esa decisión. Posteriormente, el señor Barreto Camacho presentó una queja contra la juez Rodríguez Plaza por los incidentes antes descritos.

Por otra parte, el alguacil Vázquez Cordero testificó que se le hacía difícil trabajar en la sala de la querellada

Rodríguez Plaza porque se sentía nervioso, hostigado e intranquilo por la forma en que ésta se comportaba y trataba a las personas. Explicó que la juez le llamaba la atención en cualquier momento si sucedía algo contrario a sus instrucciones sobre la manera en que debía manejarse la sala.

El 29 de agosto de 2008 el alguacil Vázquez Cordero estuvo asignado a la sala que presidía la juez Rodríguez Plaza. Después que se terminaron de atender los casos, el alguacil tuvo una duda con relación a un auto de prisión. El alguacil fue a la oficina de la querellada Rodríguez Plaza para auscultar si procedía el auto de prisión aunque la persona imputada fue referida a la Oficina de Servicios con Antelación al Juicio (OSAJ). Mientras el alguacil conversaba con el secretario Barreto Camacho, la querellada Rodríguez Plaza le gritó desde su oficina, y le requirió que entrara y le explicara lo sucedido. Cuando el alguacil le explicó su duda, la juez Rodríguez Plaza comenzó a recriminarle, diciéndole que él tenía que conocer lo que sucedió y que para eso él estaba allí. El alguacil intentó explicarle pero la juez volvió a interrumpirlo. Le dijo que no estaba prestando atención. En ningún momento le dio oportunidad al alguacil para que explicara lo ocurrido.

Otro día, debido a la cantidad de casos asignados que tenía la querellada Rodríguez Plaza, la sala contaba con dos alguaciles. Hubo un momento en que la juez Rodríguez Plaza, desde el estrado, en voz alta, le llamó la atención al alguacil Vázquez Cordero. Le indicó que no podía permanecer

sentado ya que tenía que ayudar al otro alguacil. Sin embargo, la razón por la cual el alguacil Vázquez Cordero se encontraba sentado era porque estaba preparando las comparecencias y citaciones. Por las situaciones antes narradas, el alguacil Vázquez Cordero presentó una queja contra la juez el 4 de septiembre de 2008.

Mediante carta fechada el 10 de octubre de 2008 dirigida a la juez administradora del Tribunal de Fajardo, el Lcdo. Ricardo Prieto García presentó una queja formal contra la juez Rodríguez Plaza. En la queja, el abogado dio a conocer su preocupación por el desempeño de la juez Rodríguez Plaza y porque había notado animosidad hacia sus clientes y él. Expresó además que había percibido un ambiente tenso y hostil, que se caracterizaba por un trato brusco y cortante de la juez hacia abogados, funcionarios del tribunal, policías y el público en general. Antes de presentar su queja, el licenciado Prieto García tuvo varios incidentes con la querellada Rodríguez Plaza. Es decir, existía cierta animosidad entre ambos. El licenciado Prieto García tenía una práctica voluminosa y asumía la representación legal de varios casos en Fajardo y pueblos limítrofes. Eso causaba que cuando sus casos eran llamados en el salón de sesiones, había que concederle turnos posteriores porque se encontraba atendiendo casos en otras salas de la región judicial. Esta práctica alteraba constantemente el calendario del tribunal. La situación le molestaba a la juez querellada porque la

ausencia del licenciado Prieto García retrasaba el ritmo en que ella atendía sus casos.

En una ocasión, la Sra. Lupe Torres Arzola, cliente del licenciado Prieto García, tenía un caso asignado en el salón de sesiones de la juez querellada. Había una vista señalada para las 11:00 a.m. El caso fue llamado antes de la hora señalada y tanto el licenciado Prieto García como su cliente no estaban presentes. Tampoco estaban presenten los testigos del Ministerio Público. Luego de hacer un resumen del expediente, la querellada Rodríguez Plaza emitió una orden de arresto contra la señora Torres Arzola, con una fianza de $500 sin derecho al 10%. Además, emitió una orden de mostrar causa contra varios testigos del Ministerio Público. Cuando el licenciado Prieto García se enteró de la orden, le solicitó que reconsiderara su decisión porque el caso se llamó antes de la hora señalada. La juez Rodríguez Plaza se reafirmó en su determinación y decretó un receso antes de lo indicado. Luego, delegó en el alguacil de sala la tarea de identificar una fecha hábil para las partes y señalar los casos aunque ello correspondía a las funciones judiciales de la entonces juez.

En otro caso, el licenciado Prieto García representaba a la Sra. Kirsy Gutiérrez en una vista de Regla 6 en alzada, por infracción de Ley Núm. 54 de 15 de agosto de 1989, Ley para la Prevención e Intervención con la Violencia Doméstica, 8 L.P.R.A. sec. 601 y ss. En esa ocasión, aunque la señora Gutiérrez no había sido citada, se ordenó su arresto. Sin

embargo, el licenciado Prieto García presenció ocasiones en las que la querellada ordenaba que la persona fuese citada y no arrestada.

El 6 de mayo de 2008, el licenciado Prieto García presentó una "Moción de inhibición", juramentada, en el caso Diadel J. Márquez v. E.L.A., NSCI2002-014 y otros, que estaba ante la consideración de la juez Rodríguez Plaza. El abogado fundamentó la moción en que la querellada Rodríguez Plaza estaba parcializada. Esa moción fue declarada no ha lugar tanto por la juez administradora Cartagena Colón como por el Tribunal de Apelaciones. Posteriormente, el licenciado Prieto García presentó una segunda "Moción solicitando la inhibición a tenor con la Regla 63.1 y 63.2 de Procedimiento Civil", en el mismo caso. En esa ocasión, fundamentó su solicitud en que presentó una queja en la OAT contra la juez Rodríguez Plaza. Esta segunda solicitud sí fue declarada con lugar. En una ocasión posterior, y a pesar de la orden de inhibición, el licenciado Prieto García volvió a litigar otro caso ante la querellada y en éste la juez Rodríguez Plaza le resolvió a favor de su cliente.

Otro evento es el que ocurrió entre la juez Rodríguez Plaza y el fiscal Luis Marrero Avilés. La juez le impuso al fiscal Marrero Avilés una sanción de $100 a favor del acusado por no cumplir con la Regla 95 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, sobre descubrimiento de prueba a favor del acusado. Luego, se celebró una vista en el caso y la juez Rodríguez Plaza le llamó la atención al fiscal Marrero Avilés

por no haber pagado la sanción. Además, le expresó al fiscal que él tenía que pagarle los $100 al acusado. El fiscal le explicó que ello no procedía en armonía con las Reglas de Procedimiento Criminal. No obstante, la juez querellada continuó requiriéndole el pago al acusado. A su vez, el acusado, en corte abierta, le requería al fiscal que le pagara los $100, diciéndole "señor, deme mis chavos". La juez querellada le repetía al fiscal que estaba al borde de un desacato mientras que todas las personas presentes en la sala se reían. Molesto, el fiscal Marrero Avilés manifestó que lo arrestaran y extendió las manos al alguacil. Finalmente, la juez Rodríguez Plaza expresó que no arrestaría al fiscal Marrero Avilés pero que sí emitiría una resolución, lo que nunca hizo.

### III

La Regla 33 de Disciplina Judicial, en lo pertinente, establece:

> Regla 33. Efecto de renuncia o expiración del término de nombramiento
>
> La renuncia o la expiración del término del nombramiento de la jueza o del juez querellado no impedirá que continúe el procedimiento disciplinario en su contra al amparo de este reglamento. La Comisión determinará si la conducta amerita la recomendación de imponerle a la jueza o al juez querellado medidas disciplinarias por violación al Código de Ética Profesional.
>
> 4 L.P.R.A. Ap. XV-B.

Es decir, "la renuncia de un miembro de la Judicatura o el vencimiento de su término no impide la continuación de un procedimiento disciplinario en su contra, siempre que la

alegada conducta impropia pueda dar lugar a su desaforo o suspensión del ejercicio de la abogacía." In re Santiago Rodríguez, 160 D.P.R. 245, 253 (2003).

Recientemente resolvimos en In re Ríos Ríos, 175 D.P.R. 75 (2008), que los abogados tienen un interés propietario en el ejercicio de la profesión legal. Por consiguiente, los abogados son acreedores de las garantías que ofrece la vertiente procesal del debido proceso de ley en aquellos procedimientos disciplinarios en que esté en juego su título. In re Ruffalo, 390 U.S. 544, 550 (1968).

No obstante, es necesario tener presente cuál es el proceso debido. En específico, en Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 887-888 (1993), mencionamos que mediante "el debido proceso de ley *procesal* se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo". (Cita omitida; énfasis en el original.) Es decir, el debido proceso de ley en su vertiente procesal es pragmático y "debe ser fundamentalmente justo al individuo en la resolución de los hechos y derechos que sirven de base para aquellas acciones gubernamentales que le privan de su vida, libertad o propiedad". Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 274 (1987).

Por otro lado, en In re Pérez Riveiro, Op. de 30 de noviembre de 2010, 2010 T.S.P.R. 230, 2010 J.T.S. 239, 180 D.P.R. ___ (2010), resolvimos que el debido proceso de ley en

su vertiente procesal que hay que conferirle a los abogados en el proceso disciplinario "se satisface siempre que se le provea al abogado querellado la oportunidad de responder y defenderse de los cargos imputados y notificados, así como de las teorías en las que se basen". Así, concluimos que

> la práctica de enmendar tácitamente la querella, a base de la prueba presentada, para sancionar a un abogado por violaciones al Código de Ética Profesional que no fueron imputadas en la querella es incompatible con la naturaleza de los procedimientos disciplinarios de los abogados y viola el debido proceso de ley.
> In re Pérez Riveiro, supra, pág. 8.

Sin embargo, la norma que pautamos en Pérez Riveiro, supra, no es rígida ni inflexible. Por esto, en In re Martínez Almodóvar, Op. de 1 de febrero de 2011, 2011 T.S.P.R. 21, 180 D.P.R. ___ (2011), mencionamos que

> a modo de excepción, en las instancias en donde el expediente ante la consideración del Tribunal refleje que en cuanto a la conducta impropia adicional al querellado se le han salvaguardado todas las garantías que emanan del debido proceso de ley, el Tribunal podrá -si lo estima apropiado- evaluar y atender dicha conducta adicional dentro del mismo procedimiento disciplinario, sin necesidad de referirla al Procurador General. Sólo así protegeremos efectivamente las garantías constitucionales del abogado-querellado y no se menoscabará su oportunidad de preparar adecuadamente su defensa ni se le impedirá velar por su sustento.

> In re Martínez Almodóvar, id., pág. 23.

En el caso ante nuestra consideración, no se enmienda la querella para añadir hechos que no se encontraban en la querella formal presentada por la Oficina de la Administración de Tribunales. Sencillamente analizamos la conducta exhibida por la licenciada Rodríguez Plaza bajo el

palio del Código de Ética Profesional y no al amparo del Código de Ética Judicial porque ella renunció a su cargo como juez antes de que interviniéramos. Además, la querellada Rodríguez Plaza tuvo amplia oportunidad de presentar prueba y refutar la que presentó la Oficina de Administración de los Tribunales en ambos procedimientos disciplinarios. En palabras del Tribunal Supremo federal, nuestra actuación de disciplinar a la licenciada Rodríguez Plaza al amparo del Código de Ética Profesional no constituye una "trampa" para enmendar la querella sin previo aviso al abogado. Por eso se permite. Véase Zauderer v. Office of Disciplinary Counsel of Supreme Court, 471 U.S. 626, 655, esc. 18 (1985), citando a In re Ruffalo, supra, pág. 551, esc. 4.

IV

En In re Liceaga, 82 D.P.R. 252 (1961), desaforamos permanentemente a un abogado porque en su desempeño como juez sentenció e impuso multas y costas a varias personas en el momento en vistas para determinación de causa probable sin haber sido radicada denuncia alguna. Determinamos que el juez se apropió ilegalmente de la cantidad de $577.25. Al así proceder, señalamos que la conducta del entonces juez José Antonio Liceaga "tiende a desacreditar el concepto del público de la justicia y a menospreciar las condiciones morales que debe reunir todo abogado." Íd., pág. 259.

Como se puede apreciar, el estándar que usamos para medir la actuación del juez Liceaga es muy similar a la apariencia de conducta impropia que esboza el Canon 38 del

Código de Ética Profesional, 4 L.P.R.A. Ap. IX. De igual modo disciplinamos a la Lcda. Elba Santiago Rodríguez por discriminar por razón de género contra las mujeres víctimas de violencia doméstica que acudían a su sala a buscar órdenes de protección. In re Santiago Rodríguez, supra. En específico, utilizamos el Canon 38 del Código de Ética Profesional y no los Cánones de Ética Judicial para disciplinar a la licenciada Santiago Rodríguez, debido a que ésta había renunciado a su cargo como juez. En aquel entonces determinamos que "las expresiones discriminatorias de la licenciada Santiago Rodríguez hacia las mujeres víctimas de violencia doméstica se apartaron de la conducta digna y honorable que exige el Canon 38, supra. Con su proceder minimizó y trivializó el serio problema de violencia doméstica que encara el país." Íd., pág. 255.

Por otro lado, en In re Suárez Marchán, 159 D.P.R. 724 (2003), censuramos enérgicamente a un abogado que en su desempeño como juez intervino y decidió varios asuntos procesales de un caso de alimentos en que las partes eran amigas suyas. Además, durante el trámite del caso, le recomendó a una de las partes que contratara a cierto abogado. Por último, el juez mantuvo comunicación privada con una de las partes. Todo esto fue una clara violación de los Cánones de Ética Judicial. No obstante, como el licenciado Suárez Marchán ya no era juez, lo disciplinamos bajo el palio de los Cánones de Ética Profesional. En específico, mencionamos que

> [l]a conducta del licenciado Suárez Marchán dista mucho de una que propenda a la exaltación del honor de la profesión legal. Por el contrario, sus actuaciones en todo tiempo aparentaron estar encaminadas a beneficiar, desde su posición como Juez Superior, a la señora Cruz Negrón y de utilizar su cargo para alterar el adecuado funcionamiento del sistema judicial.

In re Suárez Marchán, id., pág. 745.

Por otro lado, en In re Barreto Ríos, 157 D.P.R. 352 (2002), censuramos enérgicamente a un abogado por insultar a las oficiales administrativas de la Secretaría del Tribunal de Primera Instancia, Sala de Ponce. En específico, encontramos que

> [l]a opinión personal del licenciado Barreto en sí no constituye conducta antiética. Sin embargo, la excesiva y grosera manifestación de tal opinión no es conducta digna de un abogado. No hay razón para insultar al personal de la Secretaria del Tribunal de Primera Instancia, diciendo: "están con una dejadez, arrastrando las nalgas, culipandeándose por la Secretaría".

Íd., pág. 358.

Si comparamos el caso de In re Barreto Ríos, Íd., con el presente notamos ciertas similitudes. En ambos casos los querellados emitieron varios epítetos contra funcionarios judiciales que se apartaron de los preceptos de dignidad, honorabilidad y cordialidad que profesa el Canon 38, supra.

Un análisis detenido de nuestras decisiones en In re Liceaga, supra, In re Santiago Rodríguez, supra, e In re Suaréz Marchán, supra, refleja que en todas ellas sancionamos a abogados por su conducta como jueces. Incluso, en los dos últimos fundamentamos nuestra decisión en el Código de Ética

Profesional. En el caso que nos ocupa tenemos el deber insoslayable de hacer lo mismo.

La Comisión de Disciplina Judicial expresó en su informe que "[s]i evaluáramos cada uno de los incidentes narrados de forma individual, podrían no constituir una violación a los Cánones de Ética Judicial." Es decir, la Comisión entiende que la raíz de los incidentes que ocurrieron en el ámbito del salón de sesiones es la ausencia de temperamento judicial de la ex juez Rodríguez Plaza. Si analizamos la mayoría de las quejas presentadas contra la ex juez, resulta forzoso concluir que ella conducía los procesos en su sala de manera atropellante y poco flexible.

Asimismo, la manera en que la ex juez Rodríguez Plaza trató tanto a los funcionarios del tribunal como a los abogados, demuestra que no tenía temperamento judicial. Ahora bien, por definición, la ausencia de temperamento judicial no es motivo para disciplinar a una abogada. En lo que a la licenciada Rodríguez Plaza respecta, ese punto es académico ante su renuncia. No obstante, el criterio general de la Parte IV del Código de Ética Profesional (Deberes del abogado en relación con sus compañeros y su profesión), 4 L.P.R.A. Ap. IX, señala que "todo abogado debe observar con los compañeros una actitud respetuosa, sincera, honrada, cordial, velando siempre por el buen ejercicio de la profesión legal".

La conducta de la licenciada Rodríguez Plaza no fue digna, honorable, respetuosa ni cordial. Fue todo lo contrario. Utilizó el poder de su cargo judicial para vejar a

otros abogados. Sin duda, todo juez viene obligado a imponer orden en su sala pero sin llegar al extremo de abusar de la honrosa toga que lleva puesta.

La licenciada Rodríguez Plaza se excedió de los contornos éticos que regulan la profesión legal. Por ello, procede sancionarla como abogada por infringir el Canon 38 del Código de Ética Profesional, supra.

Debemos, considerar, no obstante, que no todos los incidentes relatados configuran violaciones de ese canon. En particular, los incidentes entre la querellada Rodríguez Plaza y los licenciados Trabal Cuevas y Prieto García, así como los relatados por el señor Barreto Camacho, secretario de la querellada, no configuran violaciones al Canon 38 sino discrepancias profundas en el manejo de sala o de la oficina de la juez. Todas fueron atendidas por los canales correspondientes. Las relacionadas a los letrados se atendieron en el proceso de recusación de la juez y las planteadas por el secretario de la querellada las atendió la juez administradora. Son los incidentes restantes los que ameritan el ejercicio de nuestra jurisdicción disciplinaria.

Debemos considerar también el historial de la querellada. Este es el primer incidente disciplinario en el que se ve involucrada la querellada Rodríguez Plaza, como juez o abogada.

V

Atendidos los hechos probados y el inmaculado historial profesional previo de la licenciada Rodríguez Plaza, limitamos la sanción en esta ocasión a una **censura enérgica**. Advertimos a la licenciada Rodríguez Plaza que cualquier transgresión futura a las normas mínimas de conducta que impone el Código de Ética Profesional, <u>supra</u>, conllevará una sanción disciplinaria más severa.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

                                        AD-2007-1
                                        AD-2009-2

WILDA RODRÍGUEZ PLAZA




                        SENTENCIA

    En San Juan, Puerto Rico, a 29 de junio de 2011.


        Por los fundamentos expuestos en la Opinión Per
Curiam que antecede, la cual se hace formar parte
integrante de la presente Sentencia, limitamos la
sanción en esta ocasión a una **censura enérgica**.
Advertimos a la licenciada Rodríguez Plaza que
cualquier transgresión futura a las normas mínimas
de conducta que impone el Código de Ética
Profesional, supra, conllevará una sanción
disciplinaria más severa.

        Lo acordó y manda el Tribunal y certifica la
Secretaria del Tribunal.




                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo