ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| UNIÓN INDEPENDIENTE AUTÉNTICA<br><br>**PETICIONARIA**<br><br>v.<br><br>AUTORIDAD DE ACUEDUCTOS DE ALCANTARILLADOS<br><br>**RECURRIDA** | KLCE202300653 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil núm.: SJ2022CV10848 (SALÓN 807)<br><br>Sobre: IMPUGNACIÓN O CONFIRMACIÓN DE LAUDO |
|---|---|---|

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores.

Grana Martínez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2023.

La Unión Independiente Auténtica (UIA o peticionaria), recurre ante nosotros de una *Sentencia* emitida por el Tribunal de Primera Instancia (TPI), Sala de San Juan, el 9 de mayo de 2023, siendo notificada el 11 de mayo de 2023. Mediante dicha *Sentencia*, el foro primario confirmó el Laudo de Arbitraje emitido por el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos (Negociado), en el cual el peticionario solicitó la revocación del laudo por entender que el despido de Providencia Otero Rodríguez se realizó injustificadamente.

El 20 de junio de 2023, la Autoridad de Acueductos y Alcantarillados (AAA o recurrida) presentó su oposición al recurso.

**I**

Según surge del expediente, la señora Otero trabajaba para la AAA. La parte recurrida fue considerada por el Gobierno de Puerto Rico como una agencia esencial durante la pandemia de COVID-19, por lo que, todos los empleados estaban obligados a asistir a sus puestos de trabajo. La AAA sostuvo que la empleada ignoró el

Número Identificador

SEN2023_____

requerimiento de su presencia en su área de trabajo, sin embargo, presentó una certificación médica para acreditar su condición de salud. No obstante, manifestaron que el certificado médico no estableció ninguna restricción, ni recomendó un acomodo razonable para la señora Otero. Por consiguiente, debido a las ausencias de la empleada, y según dispone el Convenio Colectivo, comenzaron un proceso de investigación, formulación de cargos, citación a vista informal y eventual destitución. Expresaron que las reglas disciplinarias negociadas en el Convenio Colectivo establecen que el abandono de empleo conlleva el despido. Así las cosas, el 6 de agosto de 2019, la señora Otero fue destituida de su empleo en la AAA.

Inconforme con dicha decisión, el 3 de septiembre de 2020, la UIA presentó una *Solicitud Para Designación o Selección de Árbitro* ante el Negociado. Por consiguiente, el 30 de marzo de 2022 fue celebrada una vista de arbitraje y las partes estipularon el Convenio Colectivo como exhibit conjunto. No obstante, por no llegar a un acuerdo entre las partes, presentaron sus respectivos proyectos de sumisión. En síntesis, la UIA solicitó que el Árbitro resolviera que el despido de la querellante se realizó injustificadamente, por lo que, el patrono debía reinstalarla a su puesto, pagarle todos los salarios, y beneficios a los que hubiese tenido derecho desde que fue despedida, entre otros. Mientras que la AAA planteó que el Árbitro debía determinar si la medida disciplinaria fue justificada o no, conforme al Convenio Colectivo y prueba presentada.

Evaluados los proyectos de las partes, el Árbitro del Negociado emitió lo siguiente:

> No se justifica la destitución sumaria de la querellante Providencia Otero. Se modifica la acción de destitución por una amonestación escrita por violación a la Regla Número 2 – Ausencias Sin Autorización; y una suspensión de diez (10) días por violación a la Regla Número 23-Insubordinacion y se ordena reposición a sus funciones sin particular restitución de salarios, licencias y cualquier otro beneficio que pudo haber acumulado a partir de la fecha de su destitución.

Aún inconforme, la peticionaria instó una *Revisión Judicial de Laudo* ante el TPI. Señaló que el Árbitro erró al no ordenar a la AAA a pagar los salarios, beneficios y emolumentos a los que tenía derecho la señora Otero desde que fue despedida.

En dicho contexto procesal, el foro primario emitió una *Sentencia* en la que declaró:

> [...] luego de analizar los escritos del caso de autos, a la luz de una interpretación integrada de la prueba estipulada y desfilada, el Convenio Colectivo, los reglamentos aplicables y el Laudo que emitió el Honorable Árbitro, el Tribunal concluye y resuelve que la determinación cumple con las normas jurisprudenciales vigentes por lo que este tribunal la considera correcta.
>
> En consecuencia y en atención a la deferencia que merece, se confirma el laudo apelado y se declara No Ha Lugar la Solicitud de Revisión.

En desacuerdo con dicha determinación, la peticionaria presentó este recurso en el que hace el siguiente señalamiento de error:

> Erró el TPI al considerar correcto el Laudo impugnado, a pesar de que el Árbitro incurrió en conducta impropia, y en violación a la política pública, al actuar en crasa violación al debido proceso de ley de la Querellante, al resolver que su destitución sumaria fue impuesta injustificadamente, pero que únicamente tenía derecho al remedio de la reinstalación a su puesto de carrera, y no al pago de todos los salarios y haberes dejados de devengar por el tiempo en que estuvo despedida injustificadamente, según mandata el Convenio Colectivo entre la AAA y la UIA, el cual fue estipulado como Exhibit conjunto durante la vista de arbitraje, y en violación al Reglamento Para el Orden Interno de los Servicios de Arbitraje del Negociado de Conciliación y Arbitraje.

## II

### A.

El auto de *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal de menor jerarquía. Véase: *Torres González v Zaragoza Meléndez,* 2023 TSPR 46, 211 DPR ___ (2023), 8*00 Ponce de León Corp. v. American International*

*Insurance*, 205 DPR 163 (2020). Distinto al recurso de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera. *Municipio v. JRO Construction*, 201 DPR 703, 711-712 (2019); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

Por su parte, la Regla 40 del Reglamento de este foro establece los criterios que debemos tomar en consideración al atender una solicitud de expedición del auto de *certiorari*. Sobre el particular dispone:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

**B.**

En nuestro ordenamiento jurídico existe una clara política pública a favor del arbitraje obrero-patronal como mecanismo alterno de solución de disputas. *Unión General de Trabajadores v.*

*Centro Médico del Turabo, Inc.*, 208 DPR 944, 955 (2022). Por tal motivo, los Laudos de Arbitraje merecen gran deferencia por parte de los tribunales de justicia. *Aut. Puertos v. HEO*, 186 DPR 417 (2012). Esta norma de autolimitación conlleva que los tribunales no lleguen a "considerar los méritos de un laudo, independientemente de que, de haber sido la controversia inicialmente resuelta a nivel judicial, la determinación final hubiese sido otra". *Aut. Puertos v. HEO*, supra, citando A. Acevedo Colom, *Legislación de Relaciones del Trabajo Comentada*, [S. Ed.], San Juan, 2007, pág. 227. Por tanto, la revisión judicial de los laudos de arbitraje se limitará a circunstancias en las cuales se demuestre la existencia de fraude, que el árbitro incurrió en conducta impropia, falta del debido proceso de ley, ausencia de jurisdicción, omisión de resolver todas las controversias en disputa o que el laudo sea contrario a la política pública. *Aut. Puertos v. HEO*, supra; *C.O.P.R. v. S.P.U.*, 181 DPR 299, 328 (2011).

No obstante, la norma de autolimitación judicial en los casos de arbitraje obrero-patronal no es de aplicación cuando las partes hayan pactado que los laudos de arbitraje sean emitidos conforme a derecho. En tales casos, "los árbitros están obligados a resolver las controversias conforme a las doctrinas legales prevalecientes y aceptadas". *Aut. Puertos v. HEO*, supra; *C.O.P.R. v. S.P.U.*, supra, pág. 329. Lo anterior significa que, en cuanto a los laudos emitidos conforme a derecho, "los tribunales podrán corregir errores jurídicos en referencia al derecho aplicable". *Aut. Puertos v. HEO*, supra, citando a *Condado Plaza v. Asoc. Emp. Casinos P.R.*, 149 DPR 347, 353 (1999).

### c.

El Art. II, Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico, dispone que ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. Art. II, Sec. 7,

Const. ELA, LPRA. De igual manera, las Enmiendas V y XIV de la Constitución de los Estados Unidos contienen disposiciones homólogas a las nuestras. Const. EEUU, Enmiendas V y XIV. El debido proceso de ley tiene dos vertientes: (a) sustantivo, cuya función es examinar la validez de una ley o reglamento a la luz de los preceptos constitucionales vigentes, con el propósito de proteger los derechos fundamentales de los individuos; y (b) procesal, en el cual "se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo". *In re Wilda Rodríguez Plaza*, 182 DPR 328 (2011) citando a *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 887 (1993). En cuanto al debido proceso de ley en su vertiente procesal, el Tribunal Supremo de Puerto Rico ha resuelto que el primer paso constituye determinar si existe un derecho propietario que justifique la existencia de un debido proceso de ley. *Domínguez Castro v. ELA*, 178 DPR 1, 35 (2010); *Torres Solano v. PRTC*, 127 DPR 499 (1990).

En el caso de un empleado público, tanto la Corte Suprema de los Estados Unidos como el Tribunal Supremo de Puerto Rico han resuelto que el mismo posee un interés propietario en su puesto, por lo cual tiene derecho a ser notificado de los cargos en su contra y a la celebración de una vista informal previa al despido donde se le dé la oportunidad de ser escuchado. *Cleveland Board of Education v. Loudermill*, 470 US 532 (1985); *Vázquez González v. Mun. de San Juan*, 178 DPR 636, 643-644 (2011); *Domínguez Castro v. ELA*, supra; *Torres Solano v. PRTC*, supra.

Una vez determinada la existencia de un interés propietario por parte de un empleado público, es necesario analizar varios factores para establecer si el procedimiento sumario cumple con los requisitos constitucionales del debido proceso de ley, entre estos están: (1) los intereses individuales afectados por la acción oficial;

(2) el riesgo de una determinación errónea priva a la persona del interés protegido y el valor probable de garantías adicionales o distintas; y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos. *Domínguez Castro v. ELA*, supra, págs. 47-48. El derecho a una vista previa al despido es de tal importancia que el Tribunal Supremo ha resuelto que, de haber sido solicitada y no celebrada, procede la imposición de pagos de salarios desde la fecha del despido hasta la fecha de celebración de una vista de arbitraje que subsane la falta de celebración de una vista informal. *U. Ind. Emp. AEP v. AEP,* 146 DPR 611, 624 (1998). No obstante, los tribunales también han resuelto que no es necesario celebrar una vista informal en situaciones de emergencia. En tales casos, procede que el patrono suspenda al empleado, con sueldo. *Cleveland Board of Education v. Loudermill*, supra; *U. Ind. Emp. AEP v. AEP*, supra; *Torres Solano v. A.E.P.*, supra.

### D.

La Secc. 6.6, inciso (3) de la Ley Núm. 8 de 4 de febrero de 2017, según enmendada, conocida como la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico* (Ley 8-2017), dispone que "[c]uando la conducta de un empleado no se ajuste a las normas y requerimientos establecidos, cada agencia deberá tomar las medidas correctivas o acciones disciplinarias necesarias y adecuadas." 3 LPRA sec. 1472f (3). Entre las acciones disciplinarias que puede tomar la agencia, se encuentran las amonestaciones verbales, reprimendas escritas, suspensiones de empleo y sueldo o la destitución. *Íd.* Sin embargo, la agencia sólo podrá destituir a un empleado de carrera por justa causa y siempre y cuando le haya notificado los cargos por escrito y sobre su derecho a solicitar vista previa. 3 LPRA sec. 1472f (4). La Ley 8-2017 dispone, además, que

una de las obligaciones mínimas esenciales de todo empleado en el servicio público consiste en "[a]sistir al trabajo con regularidad, puntualidad y cumplir la jornada de trabajo establecida". 3 LPRA sec. 1472f (8)(a).

Por otra parte, el Convenio Colectivo de la AAA y UIA para el 2012-2015, tipificaba varias faltas, entre ellas, las ausencias sin autorización:

> 2. AUSENCIAS SIN AUTORIZACIÓN – Incurrir en ausencias sin autorización. Para fines de aplicar la medida disciplinaria correctiva, se considerará la ausencia sin autorización de un (1) día.
>
> Amonestación Escrita: Primera Ofensa
> Suspensión 6-10 días laborables: Segunda Ofensa
> Suspensión de 10-15 días laborables: Tercera Ofensa
> Destitución: Cuarta Ofensa

Como podemos observar, la Ley 8-2017 enfatiza la asistencia al trabajo como una de las obligaciones esenciales de todo empleado público. En atención a ello, el Convenio Colectivo tipificó una ausencia sin autorización, como una falta que podría llevar a la destitución del puesto.

**E.**

En nuestra jurisdicción impera una clara política pública a favor del manejo adecuado de fondos públicos. El Art. VI de la Secc. 9 de la Constitución del Estado Libre Asociado de Puerto Rico dispone que "[s]ólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las autoridades del Estado, y en todo caso por autoridad de ley". Art. VI, Secc. 9, Const. del ELA, LPRA. Nuestro Tribunal Supremo reiteradamente ha resuelto que se debe evitar el dispendio, la extravagancia, el favoritismo y la prevaricación en los contratos gubernamentales. *Fernández & Gutiérrez v. Mun. de San Juan,* 147 DPR 824 (1999); *Hatton v. Municipio de Ponce,* 134 DPR 1001, 1005 (1994).

**III**

En el caso de autos, la señora Otero, como consecuencia de una pandemia por COVID-19 y debido a su condición de salud, para la cual presentó un certificado médico, decidió ausentarse de su trabajo. Como consecuencia, la parte recurrente tomó la determinación de despedirla. No obstante, evaluado el caso en el Negociado de Conciliación y Arbitraje, el Árbitro en su determinación dispuso que no se justificaba la destitución de la señora Otero, por lo que, ordenaba la reposición a sus funciones, pero sin restitución de salarios, licencias y cualquier otro beneficio. El foro primario acogió la determinación del Árbitro por cumplir con las normas vigentes.

La UIE alega que erró el TPI al considerar correcto el Laudo, a pesar de que el Árbitro resolvió que la destitución fue injustificada, pero que únicamente tenía derecho a la restitución de su puesto, y no al pago de los salarios y beneficios dejados de devengar por el tiempo en que estuvo despedida. Por su parte, la AAA sostiene que la *Sentencia* dictada por el TPI es válida, puesto que no concurrieron ninguna de las causales reconocidas jurisprudencialmente para revocar el Laudo de Arbitraje.

Así las cosas, nos corresponde determinar si el foro de primera instancia incidió al acoger la determinación del laudo objeto de la controversia.

Como hemos visto, la AAA cumplió con su deber de notificación al empleado, según lo requerido por el debido proceso de ley, ante sus ausencias. No obstante, la sanción impuesta al despedirla fue la más severa, puesto que, las reglas disciplinarias en el Convenio Colectivo establecen que las ausencias no autorizadas como primera ofensa conllevan una amonestación escrita. Del expediente surge que la señora Otero no abandonó su trabajo, ni se ausentó sin previa notificación, además que presentó un certificado

médico por temor a estar expuesta y/o contraer el virus del COVID-19 debido a su condición de salud, también mantuvo comunicación con su supervisora.

De otra parte, el Gobierno de Puerto Rico decretó una cuarentena, sin embargo, excluyó a los empleados identificados como esenciales, entre ellos los de la AAA. Debido a ello, los recurrentes procedieron a establecer un *Plan de Control de exposición para el Retorno al Trabajo ante COVID-19* y emitieron notificaciones a sus empleados, entre ellos la señora Otero, para que se presentaran a sus puestos de trabajo. Sin embargo, la señora Otero no se presentó por alegados riesgos de salud.

A pesar de sus ausencias y comunicaciones con su supervisora, no se justifica la ausencia de la señora Otero a su lugar de trabajo, puesto que, no se sustenta que la querellante se pudiera contagiar por la falta de protocolos o guías en su lugar de trabajo. A su vez, un empleado público que no ha trabajado o no se ha acogido a alguna licencia con paga, no ha devengado salario alguno que justifique el desembolso de fondos públicos por tal concepto.

Así las cosas, sostenemos que el Árbitro actuó correctamente al determinar que la medida disciplinaria tomada contra la señora Oquendo fue muy severa, y no procedía los salarios dejados de devengar durante el tiempo que estuvo fuera.

**IV**

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se confirma al TPI.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones