EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2020 TSPR 156 |
|---|---|
| Rafael Ramos Sáenz (TS-15,269) | 205 DPR _____ |

Número del Caso:  AD-2018-1


Fecha:  17 de diciembre de 2020


Abogados del Promovido:

     Lcdo. Ramón E. Colón Pratts
     Lcdo. Ivandeluis Miranda Vélez


Oficina de Administración de los Tribunales
Oficina de Asuntos Legales:

     Lcda. Cristina Guerra Cáceres
     Lcda. Rosa María Cruz-Niemiec
     Lcda. Valerie Díaz Aponte

Comisión de Disciplina Judicial:

     Lcda. Aida N. Molinary de la Cruz
     Presidenta

     Lcda. Lourdes V. Velázquez Cajigas
     Presidenta Interina

     Lcda. Aleida Varona Méndez
     Lcda. Evelyn Benvenutti Toro
     Lcdo. José Miranda de Hostos


Materia:  La suspensión será efectiva el 17 de noviembre de 2013, fecha en que se le notificó al abogado de su suspensión inmediata.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| *In re* | | |
| Rafael Ramos Sáenz | **Núm.** AD-2018-0001 | |

*PER CURIAM*

San Juan, Puerto Rico, a 17 de diciembre de 2020.

En esta ocasión, nos corresponde ejercer nuestro poder inherente de reglamentar la profesión legal para suspender inmediata e indefinidamente a un miembro de la profesión, no tan sólo por infringir el Código de Ética Profesional, sino además por incurrir en conducta delictiva por la cual se declaró culpable y por la que fue posteriormente sentenciado.

### I.

El Lcdo. Rafael Ramos Sáenz fue admitido al ejercicio de la abogacía el 16 de febrero de 2005, y al ejercicio de la notaría el 15 de marzo de 2005.[1] Al momento en que ocurrieron los hechos que originaron la querella de autos, el licenciado Ramos Sáenz se desempeñaba como Juez Municipal de la Región Judicial de Aguadilla. A su vez, como parte de sus funciones, ocupaba el cargo de Presidente de la Comisión Local de Elecciones de Moca 037.[2]

_____

[1] El 30 de abril de 2010, el licenciado Ramos Sáenz cesó voluntariamente del ejercicio de la notaría a raíz de que fue confirmado al cargo de Juez Municipal.

[2] Posteriormente, éste fue ascendido al cargo de Juez Superior en el Tribunal de Primera Instancia, Sala Superior de Aguadilla. En el mes de enero de 2018, fue nominado y

El 28 de marzo de 2018, la Oficina de Administración de Tribunales (en adelante, OAT) presentó ante la consideración de la Comisión de Disciplina Judicial un *Informe de Investigación* sobre la conducta del licenciado Ramos Sáenz, quien para ese momento ostentaba el cargo de Juez Superior. Dicho informe estuvo acompañado de prueba documental obtenida como parte de la investigación realizada por la Oficina de Asuntos Legales.[3]

En apretada síntesis, en el informe presentado se le imputó al entonces juez Ramos Sáenz participar desde el año 2015 en las reuniones de un grupo conocido como Plan para Puerto Rico, cuyos integrantes eran allegados al Partido Nuevo Progresista. Específicamente, este grupo fue parte del equipo de trabajo del ex Gobernador Ricardo Rosselló Nevares, tanto cuando éste era precandidato a la Gobernación, como luego de que pasara a ser el candidato a la Gobernación. A raíz de su participación y colaboración en este grupo, el licenciado Ramos Sáenz, entonces Juez Municipal, elaboró una propuesta denominada Presupuesto Base Cero. Es menester destacar que la propuesta de Plan para Puerto Rico se

---

confirmado como Presidente de la Comisión Estatal de Elecciones, puesto que ocupó hasta el 6 de febrero de 2018, fecha en que se hicieron públicos varios señalamientos que ocasionaron su renuncia y suscitaron el procedimiento disciplinario que nos ocupa.

[3] El 8 de febrero de 2018, la Jueza Presidenta Oronoz Rodríguez emitió una orden mediante la cual suspendió temporeramente al entonces juez Ramos Sáenz de sus funciones judiciales y administrativas hasta tanto concluyera la investigación en curso y se llevaran a cabo los trámites de rigor.

convirtió en la plataforma del Partido Nuevo Progresista de cara a las Elecciones Generales del 8 de noviembre de 2016 y, a su vez, en el plan de gobierno luego de prevalecer.

Las anteriores imputaciones surgieron a raíz de intercambios de mensajes de texto en diversos chats a los que pertenecía el entonces juez Ramos Sáenz en la aplicación de *WhatsApp* con los integrantes del equipo de Plan para Puerto Rico.[4] Además, según surge de los mensajes de texto en cuestión, aun cuando éste ostentaba su cargo de Juez Municipal, se reunía pública y abiertamente con dicho equipo de trabajo. También, como consecuencia de la investigación llevada a cabo, se denunció el uso indebido de su correo electrónico oficial y el equipo de la Rama Judicial para realizar gestiones relacionadas con dicho grupo.

Por otro lado, en cuanto a su conducta como Presidente de la Comisión Local de Elecciones de Moca, se señaló su cuestionable proceder ante una consulta por la Comisionada del Partido Popular Democrático sobre si se permitía la participación de observadores de los distintos partidos en

---

[4] Específicamente, éste formó parte de los chats denominados *Plan para Puerto Rico*, *P3R-Estructura Gerencial* y *#TeamP3R-coffee break*. Según se desprende de la investigación realizada por OAT, el chat *#TeamP3R-coffee break* fue creado el 13 de marzo de 2015 y era utilizado como un espacio para que los integrantes del equipo de trabajo de Plan para Puerto Rico hablaran de asuntos informales y misceláneos, mientras que *P3R-Estructura Gerencial*, creado el 1 de abril de 2016, era utilizado para llevar a cabo los trabajos de dicho grupo. Véase *Informe de Investigación*, en las págs. 7-10.

el proceso de voto adelantado a domicilio, debido a que la Comisionada del Partido Nuevo Progresista había informado que tendría observadores durante dicho proceso. Según se desprende del *Informe de Investigación*, éste consultó el asunto en uno de los chats a los que pertenecía con integrantes del equipo de Plan para Puerto Rico, con el propósito de encontrar a alguien que pudiera ayudarlo a resolver la controversia ante su consideración y emitir una determinación al respecto.[5] Asimismo, se trajo a la luz un intercambio de mensajes de texto mediante los cuales éste compartió información con los miembros de uno de los chats sobre la cantidad de electores -específicamente aquellos afiliados al Partido Nuevo Progresista- que estarían emitiendo su voto adelantado a domicilio.[6]

Finalmente, surge de la investigación realizada que el licenciado Ramos Sáenz, en ese entonces Juez Municipal, solicitó a través de la plataforma digital conocida como

---

[5] Para disponer del asunto, determinó mediante resolución que todos los partidos tenían derecho a tener observadores en el proceso de voto a domicilio. Ésta, según el *Informe de Investigación*, fue enviada mediante la aplicación de *WhatsApp*. No obstante, no existe récord oficial alguno de tal resolución. *Informe de Investigación*, en las págs. 14-24.

[6] El intercambio de mensajes de texto de éste en el chat *#TeamP3R-coffee break* sobre este asunto lee como sigue:
"Juez Ramos [Sáenz]:
-Si ahora estoy en la JIP de moca, ya salieron las rutas (8:41am)
-Cerca de 300 encamados (8:41am)
-240 para ser exacto (8:42am)
-140 pnps (8:42am)
[…]
-Eso es moca.. Hay que verificar como corren los demás (8:52am)"
*Id.* en las págs. 24-25.

"Banco de Talento del Gobernador" una serie de puestos, entre los cuales se encontraba el cargo de Juez Superior, Juez del Tribunal de Apelaciones y Presidente de la Comisión Estatal de Elecciones, justamente después de que el entonces candidato Ricardo Rosselló Nevares prevaleciera en las elecciones generales. Ante estos hechos, se le imputó dar la impresión, al compartir su agradecimiento con los integrantes de uno de los chats respecto a su eventual nombramiento como Juez Superior,[7] e igualmente cuando fue nombrado Presidente de la Comisión Estatal de Elecciones,[8] que su participación en el grupo

---

[7] "[Juez Ramos Sáenz:]
-SALUDOS... EL GOBERNADOR ME ACABA DE ASCENDER A J[U]EZ [SIC] SUPERIOR.... ESTOY SUPER CONTENTO Y QUERIA [SIC] COMPARTIRLO CON TODOS USTEDES...
[Mensajes de los demás integrantes del chat]
-Plan, Plan, Plan! Felicitaciones Luis!!
-[O] espera q es Rafa ah bueno pues eso lo esperabamos [sic]
-Hon Rafael Ramos; Congrats vuestro Honor... DTBM
-Yessssss Rafa, que alegría! Te felicito por que te lo ganaste. Un abrazo hermano."
*Id.* en las págs. 29-30.
[8] [Mensajes de integrantes del chat]
"-Raaaaaafaaaa!! Congrats!!! Plan, plan, plan!!!!
-Otra para Rafa! Felicidades respetable amigo y hermano. P3P siempre...
-Woooooowww Vuestro Honor muchas felicidades por eso [sic] merecido nombramiento!! Una vez mas como es q se dice #PlanPlanPlan.
-Que clase de palo, wao Rafa, tu trabajo duro en Plan, pero sobre todo tu disciplina han sido claves para este tu nombramiento, enhorabuena!
-Excelente nombramiento. . .felicidades Honorable.
-Felicidades Rafael. Bendiciones. Conozco tu compromiso."
[Juez Ramos Sáenz:]
-Muchas gracias equipo...Se les quiere.
-Mil gracias Itza. Si no fuera por ustedes esto no seria [sic] posible. Un abrazo."

Plan por Puerto Rico lo hizo acreedor e influenció la obtención de dichos puestos.

Evaluado el informe en cuestión por la Comisión de Disciplina Judicial, ésta designó al Lcdo. Ángel F. Rossy García, Comisionado Asociado, para que lo evaluara, en conjunto con los documentos que lo acompañaban, y determinara la existencia o no de causa probable para presentar una querella contra el entonces juez Ramos Sáenz. El 13 de abril de 2018, éste determinó que existía base razonable para autorizar la presentación de una querella y dar paso a un procedimiento disciplinario formal por haberse incurrido en conducta constitutiva de violación a los Cánones 1, 2, 3, 4, 8, 22, 23, 26, 27 y 28 del Código de Ética Judicial, 4 LPRA Ap. IV-B, y al Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38. Ese mismo día, el licenciado Ramos Sáenz presentó su renuncia al cargo de Juez Superior, la cual fue aceptada por el entonces gobernador de Puerto Rico, Ricardo Rosselló Nevares.

Luego de que la Comisión de Disciplina Judicial requiriera que se presentara la correspondiente querella, ésta fue presentada el 26 de abril de 2018. En atención a que el licenciado Ramos Sáenz ya no ocupaba el cargo de juez, se formularon los siguientes cargos:

> PRIMER CARGO
> Mientras ejercía sus funciones judiciales como Juez Municipal y Presidente [sic] una Comisión Local, el Querellado formó parte de un equipo de trabajo vinculado o afiliado a un movimiento, partido y/o candidato político y colaboró activamente como miembro de este en talleres, reuniones y participando de distintos chats

creados para ello. Su proceder arrojó dudas sobre su capacidad de adjudicar imparcialmente las controversias judiciales ante sí violentando el Canon 38 de Ética Profesional, el cual pauta la obligación de los miembros de la profesión legal de preservar el honor y la dignidad de la profesión, evitando hasta la apariencia de conducta profesional impropia.

SEGUNDO CARGO
El Querellado comprometió, o dio la impresión de haber comprometido, su independencia e imparcialidad como Presidente de una Comisión Local al consultar o dar la impresión de consultar una controversia electoral en mensajes de texto colocados en el chat *coffee break* a través de la aplicación de *WhatsApp*, cuyos miembros estaban vinculados con un movimiento, candidato o partido político. Al así hacerlo, socavó la integridad e imagen de la profesión legal y promovió la percepción que su ánimo adjudicativo servía a intereses ajenos a la búsqueda de la verdad y la justicia. Su conducta distó mucho de una que propenda la exaltación del honor de la profesión legal y vulneró los deberes recogidos en los Cánones 35 y 38 de Ética Profesional, así como los principios consagrados en el Preámbulo de dicho Código.

TERCER CARGO
El Querellado lesionó la imagen de la Rama Judicial y socavó el respeto y la confianza que debe tener el pueblo en la profesión legal, al enviar, reenviar y recibir mensajes no autorizados ni relacionados a sus funciones oficiales, utilizando la propiedad y el correo electrónico oficial de la Rama Judicial, varios de ellos durante su jornada laboral. Su proceder constituyó un injustificado y abierto menosprecio con las normas y políticas de la Rama Judicial en torno al uso de equipos tecnológicos y a su vez traiciona el compromiso de laboriosidad y rectitud al que todo servidor público debe propender. La conducta del Querellado mancilló severamente la honradez y dignidad de la profesión legal, siendo incompatible con el Preámbulo y lo dispuesto en los Cánones 35 y 38 de Ética Profesional.

CUARTO CARGO
El Querellado compartió un agradecimiento por un nombramiento judicial obtenido con los participantes de una conversación a través de la aplicación de *WhatsApp* como parte de un grupo

cuyos miembros estaban vinculados con un movimiento político. Al así hacerlo, el Querellado dio la impresión de reconocer o entender que su rol en dicho movimiento perseguía obtener ventaja para lograr puestos o nombramientos de prevalecer su candidato. La conducta del Querellado está reñida con los Cánones 35 y 38 de Ética Profesional y con el Preámbulo de dicho Código y desmereció profundamente la imagen de integridad de los miembros de la judicatura y los profesionales del derecho.

*Querella*, en las págs. 34-35.

El 8 de mayo de 2018, el licenciado Ramos Sáenz presentó ante la Comisión de Disciplina Judicial una *Solicitud de Paralización* en la cual expresó que había sido referido por la entonces Secretaria de Justicia, Hon. Wanda Vázquez Garced, a la Oficina del Panel del Fiscal Especial Independiente para la presentación de cargos criminales relacionados con los mismos hechos imputados en la *Querella*. Por tanto, solicitó la paralización del proceso disciplinario, ya que cualquier alegación que se formulara podía afectar directamente el proceso penal iniciado en su contra. El 22 de mayo de 2018, la Comisión de Disciplina Judicial decretó la paralización del proceso disciplinario.

Así las cosas, el 16 de septiembre de 2019, se dictó sentencia contra el letrado.[9] Ante esto, el 18 de

---

[9] El 13 de julio de 2019, éste hizo alegación de culpabilidad por dieciocho (18) infracciones al Art. 263 Código Penal de Puerto Rico y una infracción al Art. 12.005 del Código Electoral de Puerto Rico para el Siglo XXI, la cual fue aceptada por el Tribunal de Primera Instancia el 23 de julio de 2019. Todos los cargos fueron reclasificados a delitos menos graves con una recomendación en cuanto a la pena de reclusión a ser cumplida de manera consecutiva.

septiembre de 2019, la Comisión de Disciplina Judicial dejó sin efecto la paralización del procedimiento disciplinario y concedió tanto a la OAT, como al licenciado Ramos Sáenz, un término para informar todo lo pertinente al proceso disciplinario pendiente.

El 30 de septiembre de 2019, la OAT compareció para informar que, en efecto, se había dictado sentencia en contra del licenciado Ramos Sáenz por dieciocho (18) infracciones al Art. 263 Código Penal de Puerto Rico, 33 LPRA sec. 5354, (negligencia en el cumplimiento del deber) y una infracción al Art. 12.005 del entonces vigente Código Electoral de Puerto Rico para el Siglo XXI (violaciones al ordenamiento electoral). A raíz de lo anterior, solicitó que: 1) la Comisión de Disciplina Judicial tomara conocimiento de la sentencia dictada por los delitos contra la función gubernamental y el Código Electoral; 2) autorizara la imposición de un quinto cargo relacionado con la convicción criminal del licenciado Ramos Sáenz por los hechos que se imputaban en la *Querella*; 3) y se dictara resolución sumaria en base a la alegación de culpabilidad hecha por éste y los hechos allí demostrados, con el propósito de recomendarle a este

---

El 16 de septiembre de 2019, se le impuso una sentencia suspendida de seis (6) años y el pago de una pena especial. Véase Sentencia del Tribunal de Primera Instancia, *Pueblo v. Rafael Ramos Sáenz*, Crim. Núm. A EG2019G0007, A EG2019G0008, A EG2019G0009 A EG20I9G0010 A EG2019G001l, A EG2019G0012, A EG201960013, A EG2019G0014 A EG2019G0015, A EG2019G0016, A EG2019G0017, A EG2019G0018, A E62019G0019, A EG2019G0020, A EG2019G0021, A EG2019G0022, A EG2019G0023, A EG2019G0024, A LE2019M0031.

Tribunal su desaforo de la profesión legal sin necesidad de trámites ulteriores.

Por su parte, el licenciado Ramos Sáenz compareció el 22 de octubre de 2019, mediante un escrito intitulado *Contestación a Querella y Oposición a Solicitud de Resolución Sumaria*. En síntesis, expresó que los hechos y la prueba no se dieron en su función como abogado, sino como juez, y que "con alto sentido de responsabilidad y respeto por la judicatura, por su familia y por su país", éste se aplicó "el castigo mayor" cuando voluntariamente renunció a sus cargos como juez y como Presidente de la Comisión Estatal de Elecciones. *Oposición a Solicitud de Resolución Sumaria*, en las págs. 6-7, 10. Asimismo, arguyó que el Canon 35 era inaplicable dado que 1) no actuó como abogado, 2) no se cuestionaba su conducta ante los tribunales, y 3) no se estableció que utilizó medios inconsistentes con la verdad, ni que indujo a ningún juzgador a error, por lo que no actuó de forma impropia y siempre se ajustó a la verdad. En cuanto al Canon 38, sostuvo que como abogado no violó ninguna de las disposiciones de ese canon.

Por otro lado, el letrado se opuso a lo solicitado por la OAT en cuanto a la imposición de un quinto cargo y que se dictara resolución sumaria. En esencia, expresó que una convicción por delito menos grave no necesariamente conllevaba la imposición de la medida disciplinaria máxima que se le puede imponer a un abogado. Asimismo, sostuvo

que, como ciudadano de bien, se excedió en el cumplimiento de sus obligaciones al participar voluntariamente en actividades que de buena fe siempre creyó que redundaban en beneficio de su país, lo cual no podía ser desalentado ni castigado. Así, aceptó que sus actuaciones al participar en chats identificados con un partido político no fueron adecuadas dado que era juez, pero que "sí eran adecuadas y altamente morales como abogado". *Id*. en la pág. 13. Finalmente, arguyó que "confundir la depravación moral con incorrección, ilegalidad, descuido o falta de circunspección" podía repercutir en graves injusticias. *Id*.

El 24 de octubre de 2019, la Comisión de Disciplina Judicial emitió una *Resolución* mediante la cual autorizó que se incluyera en la *Querella* un quinto cargo, a saber:

QUINTO CARGO
El querellado realizó alegación de culpabilidad por dieciocho (18) infracciones al Artículo 263 del Código Penal y una al Artículo 12.005 del Código Electoral de Puerto Rico para el Siglo XXI, tras lo cual el Tribunal de Primera Instancia dictó Sentencia en su contra y le impuso una Sentencia Suspendida de seis (6) años y el pago de la pena especial. Tal determinación lesiona profundamente la imagen de la Rama Judicial y mancilla la confianza en los procesos eleccionarios cuya integridad los jueces y juezas están llamados a proteger. En atención a que los miembros de la judicatura y de la profesión legal son los primeros llamados a respetar la ley y hacerla cumplir, con su conducta, el Querellado hizo total abstracción de sus deberes éticos consagrados tanto en los Cánones de Ética Judicial como en los Cánones 35 y 38 de Ética Profesional, afectando profundamente la imagen de la Rama Judicial y de la profesión legal. La deficiencia moral dimanante de la conducta aceptada por este en su alegación de culpabilidad activa la aplicación

del procedimiento sumario al amparo de la Sección 9 de la Ley de 11 de marzo de 1909, 4 LPRA sec. 735, que establece instancias en las que amerita separar a un abogado de la profesión legal.

Así las cosas, el caso quedó sometido para que la Comisión de Disciplina Judicial rindiera su recomendación. En consecuencia, el 27 de febrero de 2020, Lourdes V. Velázquez Cajigas, presidenta interina de la Comisión de Disciplina Judicial, emitió el informe correspondiente. En el mismo, concluyó que la conducta del licenciado Ramos Sáenz no constituyó una violación al Canon 35 del Código de Ética Profesional. Asimismo, determinó que no se ofreció el *quantum* de prueba necesario para demostrar que la conducta imputada al licenciado Ramos Sáenz en el cuarto cargo constituyera una violación al Canon 35. Por otro lado, concluyó que -de un análisis de la prueba documental presentada- la conducta imputada al letrado en el primer, segundo, tercer y quinto cargo fue demostrada de forma clara, robusta y convincente, por lo que constituyó una infracción al Canon 38 del Código de Ética Profesional. Finalmente, razonó que, en virtud de la alegación de culpabilidad del licenciado Ramos Sáenz por violentar el Art. 263 del Código Penal, *supra*, y el Art. 12.005 del Código Electoral entonces vigente, procedía su desaforo del ejercicio de la abogacía, según lo dispuesto en la Sección 9 de la Ley de 11 de marzo de 1909.

Evaluado el informe presentado por la Comisión de Disciplina Judicial, así como los documentos que constan en el expediente, estamos en posición de resolver.

## II.

Las Reglas de Disciplina Judicial delimitan el esquema procesal que se utiliza para tramitar los asuntos disciplinarios instados contra miembros de la Judicatura. En específico, la Regla 33(a) dispone que "[l]a renuncia o la expiración del término del nombramiento de la jueza o del juez querellado no impedirá que continúe el procedimiento disciplinario en su contra al amparo de este reglamento. La Comisión determinará si la conducta amerita la recomendación de imponerle a la jueza o al juez querellado medidas disciplinarias por violación al Código de Ética Profesional." 4 LPRA Ap. XV-A, R. 33(a).

Conforme a lo anterior, hemos sido consistentes en que la renuncia de un miembro de la Judicatura o el vencimiento de su término no es óbice para que ejerzamos nuestro poder inherente y se continúe un procedimiento disciplinario en su contra, siempre que la alegada conducta imputada pueda dar lugar a una sanción disciplinaria. Véase, entre otros, *In re García Vega*, 189 DPR 741 (2013); *In re Rodríguez Plaza*, 182 DPR 328 (2011); *In re Liceaga*, 82 DPR 252 (1961). Lo contrario conllevaría al absurdo de que, tan pronto un integrante de la judicatura cese su cargo voluntariamente, sea separado del mismo o finalice el término de su nombramiento, quede exento de

responsabilidad, sin más. *In re Campoamor Redin*, 150 DPR 138 (2000).

Por tanto, dado que el hecho de que el licenciado Ramos Sáenz ya no ocupe su cargo en la Judicatura no es obstáculo para que pasemos juicio sobre sus actuaciones mientras fungía como tal, corresponde que evaluemos si éste incurrió en conducta que contraviene los Cánones del Código de Ética Profesional, según los cargos imputados en la *Querella*.

**III.**

**A.**

El Código de Ética Profesional establece que es "de primordial importancia instituir y mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía". Preámbulo, 4 LPRA Ap. IX. Por esta razón, es menester que todo abogado demuestre la "mayor y más excelsa competencia, responsabilidad e integridad" al desempeñarse como jurista. *Id.*

Asimismo, el Canon 35 del Código de Ética Profesional le impone a todo miembro de la profesión legal el deber de proceder con sinceridad y honradez ante los tribunales, hacia sus representados, y en las relaciones con sus compañeros. No se considera sincero ni honrado el utilizar medios que sean inconsistentes con la verdad. 4 LPRA Ap. IX, C. 35. La trascendencia de este canon estriba en que "la verdad es atributo inseparable del ser abogado y, sin ella, la profesión jurídica no podría justificar su

existencia". *In re Montañez Miranda*, 157 DPR 275, 281 (2002). De esta manera, se imponen normas mínimas de conducta con el propósito de preservar el honor y la dignidad de la profesión, las cuales deben ser observadas por los abogados en toda faceta en la que se desempeñen. *In re Sepúlveda Girón*, 155 DPR 345, 358-359 (2001).

Por su parte, el Canon 38 impone a todos los abogados el deber ético de conducirse, tanto en el desempeño de su ministerio profesional como en su vida privada, de forma digna y honorable. Ello, aunque al así hacerlo conlleve sacrificios personales. A esos efectos, el precitado canon dispone que todo letrado debe evitar hasta la apariencia de conducta profesional impropia. 4 LPRA Ap. IX, C. 38.

Anteriormente, hemos establecido que la práctica de la profesión legal está revestida de un alto interés público. *In re Quiñones Ayala*, 165 DPR 138, 144 (2005). Distinto a otras profesiones, el ejercicio de ésta "conlleva una seria y delicada función ciudadana, ya que representa servicio, ética y ejemplo". *Id*. La responsabilidad moral y ética que rigen nuestra profesión obliga a todo letrado a realizar un ejercicio de introspección en el cual continuamente examine su comportamiento. Hemos señalado que "por ser los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen". *In re Guemárez Santiago*, 191 DPR 611, 620 (2014). Ello,

pues, son la imagen misma de todo el andamiaje de nuestro sistema de justicia. Por esa razón, todo miembro de la profesión legal debe actuar a un nivel superior -y no al margen- de los postulados éticos.

**B.**

Como es sabido, este Tribunal posee el poder inherente de reglamentar el ejercicio de la profesión legal en nuestra jurisdicción. Véanse *In re González Díaz*, 163 DPR 648, 650 (2005). Ínsito a esa función, se encuentra nuestra facultad de disciplinar y suspender a aquellos letrados que no ejemplifiquen con su conducta los valores y principios de la profesión.

La Sección 9 de la Ley de 11 de marzo de 1909, 4 LPRA sec. 735, le reconoce a este Tribunal la facultad de suspender a un letrado de forma sumaria cuando recaiga en su contra un dictamen de culpabilidad por la comisión de algún delito relacionado con la profesión legal o que implique depravación moral. Esta sección dispone, en lo pertinente:

> El abogado que fuere culpable de engaño, conducta inmoral (malpractice), delito grave (felony) o delito menos grave (misdemeanor), en conexión con el ejercicio de su profesión o que fuere culpable de cualquier delito que implicare depravación moral, podrá ser suspendido o destituido de su profesión por el Tribunal Supremo de Puerto Rico. La persona que siendo abogado fuere convicta de un delito grave cometido en conexión con la práctica de su profesión o que implique depravación moral, cesará convicta que fuere, de ser abogado o de ser competente para la práctica de su profesión. A la presentación de una copia certificada de la sentencia dictada al Tribunal Supremo, el nombre de la persona convicta será borrado, por orden

del Tribunal, del registro de abogados. Al ser revocada dicha sentencia, o mediante el perdón del Presidente de los Estados Unidos o del Gobernador de Puerto Rico, el Tribunal Supremo estará facultada [sic] para dejar sin efecto o modificar la orden de suspensión.

Cónsono con lo anterior, cuando surja de una sentencia la admisión de unos hechos que implican depravación moral y falta de honradez, corresponde la separación inmediata del miembro de la profesión legal.[10]

Ahora bien, hemos determinado que la depravación moral "tratándose de abogados, consiste ... en hacer algo contrario a la justicia, la honradez, los buenos principios o la moral ...". *Morales Merced v. Tribunal Superior*, 93 DPR 423, 430 (1966). Véanse, además, *In re Colón Ledee*, 190 DPR 51, 55 (2014); *In re García Quintero*, 138 DPR 669, 671 (1995). Asimismo, hemos definido depravación moral como el "estado o condición del individuo, compuesto por una deficiencia inherente de su sentido de la moral y la rectitud; en que la persona ha dejado de preocuparse por el respeto y la seguridad de la vida humana y todo lo que hace es esencialmente malo, doloso, fraudulento, inmoral, vil en su naturaleza y dañino en [sus] consecuencias". *Id*.

**IV.**

Considerado el Informe presentado por la Comisión de Disciplina Judicial, así como el expediente del caso, es

---

[10] Es importante destacar que la suspensión sumaria procede una vez haya advenido final y firme la sentencia dictada en contra del letrado. En caso de que la sentencia no sea final y firme, procede su suspensión provisional hasta tanto ésta advenga como tal.

evidente que el licenciado Ramos Sáenz incurrió en la conducta imputada en el primer, segundo, tercer y cuarto cargo. Claramente, mientras ocupaba el cargo de Juez Municipal, el licenciado participó en distintos chats a través de la aplicación de *WhatsApp*, cuyos integrantes eran personas que se encontraban vinculados a un candidato para el Partido Nuevo Progresista. Asimismo, participó y colaboró activamente en la configuración de propuestas que formaron parte de la plataforma política de dicho candidato, y posteriormente del partido, así como en actividades político-partidistas de cara a los comicios del 8 de noviembre de 2016, aun cuando esto era evidentemente incompatible con sus funciones como juez. Ello, sin duda, afectó la imagen de imparcialidad y prudencia de la Judicatura.

Por otro lado, el licenciado Ramos Sáenz hizo uso indebido de su correo electrónico oficial, del equipo y la red de la Rama Judicial, como parte de sus gestiones de índole político-partidista durante días de semana y en horas laborables. Esto, a pesar de que dichas actuaciones están reñidas con las normas y políticas de la Rama Judicial.

Por último, el licenciado Ramos Sáenz llevó a cabo una consulta en uno de los chats en los que participaba sobre una controversia electoral que debía resolver en el ejercicio de su función adjudicativa como Presidente de una Comisión Local de Elecciones. Evidentemente, ante la

estrecha relación que tenía con personas afiliadas a un partido político a raíz de su colaboración con éstos en la elaboración de propuestas de cara a las primarias y las Elecciones Generales del año 2016, el licenciado Ramos Sáenz dio la impresión de actuar movido o influenciado por otras inclinaciones al ejercer sus funciones jurídico-electorales. Ello, particularmente, ante el hecho de que esas personas podían tener interés en el resultado de la controversia ante su consideración. Sus actuaciones provocaron serias dudas y pusieron en entredicho su capacidad de actuar con imparcialidad e independencia judicial.

Indiscutiblemente, la conducta del licenciado Ramos Sáenz es contraria a sus deberes y responsabilidades al amparo del Código de Ética Profesional. Por esa razón, concluimos que incurrió en la conducta imputada en los cargos primero, segundo, tercero y cuarto. Su proceder demostró que éste claudicó su obligación de desempeñar sus funciones con la mayor competencia, responsabilidad e integridad, por lo que infringió lo consagrado en el Preámbulo del Código de Ética Profesional. Asimismo, y en extremo lamentable, sus actuaciones fueron objeto de difusión y discusión pública, lo que mancilló la imagen, integridad, confianza y respeto hacia la Judicatura a la que pertenecía y la clase togada que representa. Por otra parte, el licenciado Ramos Sáenz incumplió con exaltar el honor y la dignidad de la profesión, e incurrió en la

conducta profesional impropia que el Canon 38 advierte que se debe evitar a toda costa. En cuanto al cuarto cargo, diferimos en cuanto a que no se ofreció el *quantum* de prueba necesario para probarlo. Si bien es cierto que coincidimos en que la conducta del licenciado Ramos Sáenz no violentó las disposiciones del Canon 35,[11] entendemos que su proceder sí violentó el Canon 38, cuya violación también le fue imputada en el mismo cargo. Surge con meridiana claridad del intercambio de mensajes de texto del licenciado Ramos Sáenz, que éste dio la impresión de que gracias a su participación en la elaboración de la propuesta Presupuesto Base Cero, y en reconocimiento a su arduo trabajo en el mismo, se le nombró y confirmó a dos (2) de los puestos a los que solicitó. Sin lugar a duda, esa actuación constituyó una afrenta a la dignidad de la profesión legal y el tipo de conducta impropia que el Canon 38 proscribe.

Ahora bien, como adelantamos, el licenciado Ramos Sáenz hizo alegación de culpabilidad y aceptó la comisión de dieciocho (18) infracciones al Art. 263 del Código Penal, *supra*, y una infracción al Art. 12.005 del entonces vigente Código Electoral de Puerto Rico. A raíz de lo anterior, se le imputó un quinto cargo, con el fin de que

---

[11] A pesar de que la conducta del licenciado Ramos Sáenz es altamente reprochable, ésta no queda enmarcada dentro de lo que de ordinario sancionamos bajo lo consagrado en el Canon 35. No quedó demostrado mediante prueba clara, robusta y convincente que el licenciado Ramos Sáenz haya utilizado medios que fueran inconsistentes con la verdad en su proceder.

se activara el procedimiento sumario al amparo de la Sección 9 de la Ley de 11 de marzo de 1909, *supra*.

Como es sabido, este Tribunal tiene el deber de desaforar a todo miembro de la profesión que exhiba en su proceder conducta inmoral, que se aparte de los postulados éticos y que lo haga indigno de pertenecer a la profesión legal. Ante los hechos de este caso, es innegable que las referidas convicciones del licenciado Ramos Sáenz afectan sus condiciones morales e implican depravación moral, lo cual es totalmente incompatible con la práctica de la abogacía. Por tal razón, procede que decretemos su suspensión inmediata e indefinida del ejercicio de la profesión legal.

## V.

Por los fundamentos que anteceden, se decreta la suspensión inmediata e indefinida del licenciado Ramos Sáenz del ejercicio de la abogacía. Se le impone el deber de notificarle a sus clientes, si alguno, sobre su inhabilidad de continuar representándolos, devolver los honorarios por trabajos no realizados e informar oportunamente de su suspensión a cualquier foro judicial y administrativo en el que tenga un caso pendiente. Deberá acreditar a este Tribunal el cumplimiento con lo anterior en un término de treinta (30) días, contados a partir de la notificación de la presente Opinión *Per Curiam* y Sentencia.

Notifíquese esta Opinión *Per Curiam* y Sentencia por medio del correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico (RUA) al Sr. Rafael Ramos Sáenz. El recibo de la notificación será confirmado por la vía telefónica.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| *In re* | **Núm.** AD-2018-0001 | |
| Rafael Ramos Sáenz | | |

SENTENCIA

En San Juan, Puerto Rico, a 17 de diciembre de 2020.

Por los fundamentos que anteceden, se decreta la suspensión inmediata e indefinida del Lcdo. Rafael Ramos Sáenz del ejercicio de la abogacía. Se le impone el deber de notificarle a sus clientes, si alguno, sobre su inhabilidad de continuar representándolos, devolver los honorarios por trabajos no realizados e informar oportunamente de su suspensión a cualquier foro judicial y administrativo en el que tenga un caso pendiente. Deberá acreditar a este Tribunal el cumplimiento con lo anterior en un término de treinta (30) días, contados a partir de la notificación de la presente Opinión *Per Curiam* y Sentencia.

Notifíquese por medio del correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico (RUA) al Sr. Rafael Ramos Sáenz. El recibo de la notificación será confirmado por la vía telefónica.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco concurre y hace constar la siguiente expresión:

> "Concurro con la Opinión *Per Curiam* que antecede en cuanto a aquellas expresiones que sostienen las sanciones disciplinarias impuestas en que un abogado "infringió lo consagrado en el Preámbulo" y "afrent[ó] a la dignidad de la profesión legal y el tipo de conducta impropia que el Canon 38 proscribe". Esto por los fundamentos que expuse en *In re Hoffmann Mouriño*, 194 DPR 179, 194 (2015), y que hago extensivos al uso del Preámbulo del Código de Ética para disciplinar a los miembros de la profesión. G. Figueroa Prieto, *Conducta Profesional*, 86 Rev. Jur. UPR 431, 439 (2017).
>
> Aunque el Preámbulo y los Criterios Generales del Código de Ética han sido considerados por este Tribunal como criterios para disciplinar en contadas ocasiones, estos

son principalmente exhortaciones generales.  G. Figueroa Prieto, *Reglamentación de la Conducta Profesional en Puerto Rico*: *Pasado, Presente y Futuro*, 68 Rev. Jur. UPR 729, 783 (1999).

Por otro lado, y como he intimado previamente, el Canon 38 por sí solo no debe ser utilizado por el Tribunal para disciplinar abogados y abogadas por tratarse de criterios sumamente subjetivos. Soy de la opinión de que para disciplinar a un miembro de la profesión legal por apariencia de conducta impropia debe demostrarse *ab initio* una violación a algún canon específico o a alguna disposición de la Ley Notarial".

El Juez Asociado señor Rivera García concurre.


                    José Ignacio Campos Pérez
                    Secretario del Tribunal Supremo